UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 05-11490 JLT

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA (FORMERLY
KNOWN AS THE TRAVELERS
INDEMNITY COMPANY OF ILLINOIS)
INDIVIDUALLY AND A/S/O DACON CORPORATION
AND CONDYNE VENTURES, LLC.,
    **Plaintiff**

v.

GENESIS INDEMNITY INSURANCE COMPANY
and TIG INSURANCE COMPANY,
    **Defendants**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT

### INTRODUCTION

This is an insurance coverage dispute. Dacon Corporation ("Dacon") and

Condyne Ventures, LLC ("Condyne") are insured by a policy issued by Travelers

Property Casualty Company of America (Formally known as the Travelers Indemnity

Company of Illinois, and hereinafter referred to as "Travelers"[1]). As described more

thoroughly in the facts section below, supra, Travelers is currently providing a defense

for Dacon and Condyne in a lawsuit filed by one Michael Martin, entitled Martin, et al. v.

Dacon Corporation, et al., Commonwealth of Massachusetts, Bristol County Superior

Court, Civil Action No. BRCV2002-00168 (hereinafter referred to as the "Martin

action"). Travelers has not contested coverage for the claims brought against Dacon and

Condyne in the Martin action. Travelers brought the instant lawsuit against Genesis

Indemnity Insurance Company ("Genesis") and TIG Insurance Company ("TIG")

---

[1] The plaintiff in this action will be referred to herein as "Travelers".

because pursuant to an additional insured endorsement in the Genesis policy (which is the policy insuring one of the other entities that is a party to the Martin action, as described more thoroughly below, supra), Dacon and Condyne are additional insureds on the Genesis policy with respect to the Martin action and said additional insured protection is expressly stated to be primary to any liability insurance held by Dacon and Condyne themselves. Genesis should therefore defend and indemnify Dacon and Condyne pursuant to the terms and limits of the Genesis policy.

This action commenced because Genesis and TIG denied their coverage obligations when Travelers, as subrogee of Dacon and Condyne, tendered the defense and indemnification of Dacon and Condyne. The instant Motion for Summary Judgment requests this Court to enter a declaration as set forth in Count I of the Complaint that, *inter alia*, Genesis (and, if applicable limits are exhausted, TIG) owe coverage obligations to Dacon and Condyne, and that Genesis has breached its duty to defend Dacon and Condyne.

## FACTS

### I.   Background.

The foundation for the instant insurance coverage dispute is a construction project in Taunton, Massachusetts, at 455 John Hancock Road. See Pl. App. Ex. 1[2] at p. 1; Pl. App. Ex. 2 at p.1; Pl. App. Ex. 3. The project generally involved the construction of an addition to a commercial freezer in a facility located in Taunton (hereinafter the "Freezer Project"). See id. The Freezer Project was completed pursuant to a "Standard Form of Agreement Between Owner and Contractor" entered into on or around September 8, 2000, wherein Condyne was designated as the "Owner" and Dacon the "Contractor". See

---

[2] References to the Plaintiff's Appendix of Exhibits shall be "Pl. App. Ex. __".

2

Pl. App. Ex. 2 at p. 1. In turn, Dacon entered into a subcontract with Environmental Fire

Protection, Inc. ("EFP") on or around October 27, 2000 to perform a certain portion of

the work that Dacon agreed to perform for Condyne, all as set forth in "Schedule A" of

the subcontract (hereinafter referred to as the "Dacon – EFP Subcontract"). See Pl. App.

Ex. 1; Pl. App. Ex. 3 at ¶ 12.

Pursuant to Schedule A, EFP's work included, without limitation, the following:

> Furnish all labor, material and supervision to complete the
> fire protection scope of work, which shall include, but not
> be limited to the following:
>
> 1.  This design/build subcontractor [EFP] is
>     responsible to provide complete design and
>     construction of the water, sanitary and roof drainage
>     plumbing system specified and/or required in the
>     project documents...
>
>     ...
> 8.  Furnish and install a dry pre-action system with
>     Protectowire lineal heat detection roof sensors at the
>     freezer and loading dock.
> 9.  Furnish a complete in-rack dry pre-action system
>     with Protectowire lineal heat detection sensors at
>     freezer.
> 10. Protectowire is to be tied at 36" o.c. minimum.
>
>     ...
> 19. A fully executed insurance certificate must be
>     received in the Dacon office prior to work
>     commencing. Insurance certificate must be in
>     original form and must name Dacon Corporation
>     and the Owner as additionally insured except for
>     Worker's Compensation coverage.

Pl. App. Ex. 1, p 8-9.

As set forth in Schedule A of the Dacon – EFP Subcontract, EFP's work included

the fire protection work for the Freezer Project. See id.; see also Pl. App. Ex. 3 at ¶ 12.

In fulfillment of its obligations under the Dacon – EFP Subcontract, EFP subcontracted a

portion of the fire protection work for the Freezer Project, specifically the work

3

connected to the installation of the "protectowire", to SJV Electric, Inc. ("SJV"). See Pl. App. Ex. 4, *Dep. Transc. of Martin*[3], at p. 16 ln. 19-22; Pl. App. Ex. 3 at ¶ 13.

Other contractors also provided work for Condyne and Dacon in connection with the Freezer Project. See generally Pl. App. Ex. 9, *Dep. Transc. of Walch*, p. 31. For example, Frazier Industrial Company, Inc. ("Frazier") contracted directly with Condyne to provide freezer racks, and Frazier subcontracted the work of installing those racks to JJS Construction, Inc. ("JJS"). See Pl. App. Ex. 3 at ¶ 8; Pl. App. Ex. 9, *Dep. Transc. of Walch* at p. 31 ln. 4-16 and p. 34 ln. 16-22.

On or about January 3, 2001, an SJV employee, Michael Martin, was working on the Freezer Project pursuant to the subcontract agreement between EFP and SJV. See Pl. App. Ex. 4, *Dep. Transc. of Martin* at p. 16 ln. 19-22, and p. 32-40; Pl. App. Ex. 3 at ¶ 13-15. In connection with his work, Mr. Martin allegedly climbed on top of the freezer racks. See Pl. App. Ex. 3 at ¶ 23; Pl. App. Ex. 4, p. 40. In the process of working, Mr. Martin alleges that he fell and was injured. See id. Mr. Martin filed a lawsuit in Bristol Superior Court against Condyne and Dacon (the Martin action) for damages connected to the January 3, 2001 injury. See id.

## II.    The Insurance Coverage Dispute.

Travelers issued a policy of general liability insurance to Dacon, Policy No. DTJCO210R3260, effective from April 1, 2000 to April 1, 2001, pursuant to which Travelers has been defending Dacon and Condyne in the Martin action. See Pl. App. Ex. 5. The Travelers policy covering Dacon contains a subrogation provision pursuant to which Travelers is subrogated to all of Dacon's and Condyne's rights against other

---

[3] The deposition of Michael Martin was taken twice during discovery in the underlying case, the Martin action. The first, dated August 4, 2003, is referred to as "Dep. Transc. of Martin" and is attached as part of the summary judgment record as Pl. App. Ex. 4. The second was dated January 31, 2005.

entities, including the rights to insurance coverage from other insurers relative to defense and indemnification with respect to the Martin action. See Pl. App. Ex. 5, p 99.

Genesis issued a policy of commercial general liability insurance to EFP with effective dates from December 5, 2000 to December 5, 2001 (referred to herein as the "Genesis Policy"). See Pl. App. Ex. 6. TIG issued a policy of excess liability insurance to EFP with effective dates from December 5, 2000 to December 5, 2001 (referred to herein as the "TIG Policy"). See Pl. App. Ex. 7.

The instant insurance coverage dispute centers on the insurance policy issued by Genesis to EFP. The Genesis Policy identifies EFP as the named insured, and contains two endorsements relating to coverage offered "additional insureds" under the Genesis Policy, i.e., the "Broad Form Blanket Additional Insured Endorsement" (the "Additional Insured Endorsement"), see Pl. App. Ex. 6, p. 26, and the Classification Description endorsement, see Pl. App. Ex. 6, p. 31. The Additional Insured Endorsement of the Genesis Policy states as follows:

> WHO IS AN INSURED (Section II) provision of the
> Policy is amended to include as an insured any person or
> organization (called "additional insured") to whom you are
> obligated by valid written contract to provide such
> coverage, but only with respect to liability for "bodily
> injury" or "property damage" arising solely out of "your
> work" on behalf of said additional insured for which
> coverage is provided by this policy.

See Pl. App. Ex. 6, p. 26.

The Classification Description endorsement of the Genesis Policy states as follows:

"Your Work" (Description)

94381-Fire Suppression Systems-Installation, Servicing or

5

Repair and Sprinkler System Design Work

99996a-Broad Form Blanket Additional Insured

> This Insurance applies only to "bodily injury," "personal injury", and "property damage" arising out of the specific work described above, and no other. All of your other operations are specifically excluded from coverage under the policy to which this endorsement is attached.

See Pl. App. Ex. 6, p. 31.

According to the Dacon – EFP Subcontract, which is a valid written contract, EFP was obligated to provide insurance coverage for Dacon and Condyne. See Pl. App. Ex. 1, p. 9 (indicating that EFP must provide an insurance certificate that is in original form and that "must name Dacon Corporation and the Owner [Condyne] as additionally insured except for Worker's Compensation coverage."). As EFP agreed by written contract to provide coverage for Dacon and Condyne, the Blanket Additional Insured Endorsement of the Genesis Policy operates to provide a defense and indemnification to Dacon and Condyne in the Martin action. See Pl. App. Ex. 6; Pl. App. Ex. 1. The TIG Policy provides excess insurance and provides that Dacon and Condyne are also additional insureds covered by the TIG Policy to the extent that the limits of the Genesis Policy are exhausted. See Pl. App. Ex. 7.

## ARGUMENT

### I.    Summary Judgment Standard and Choice of Law.

Summary Judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Mass. Mut. Life Ins. Co. v. Fraidowitz, 360 F.

6

Supp. 2d 243, 246 (D. Mass. 2005). For Rule 56 purposes, the Court reads the record in a light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Merchants Ins. Co. of New Hampshire, Inc. v. United States Fidelity and Guaranty Co., 143 F.3d 5, 7 (1st Cir. 1998). In that regard, "an inference is reasonable only if it can be drawn from the evidence without resort to speculation." Id.

Massachusetts law governs this dispute because the forum's choice of law rules govern Federal courts sitting in diversity, and Massachusetts courts take a flexible interest approach to conflict of laws and will consider a wide variety of factors in choosing the applicable law. See Millipore Corp. v. The Travelers Indemnity. Co., 115 F.3d 21, 29-30 (1st Cir. 1997). Dacon, Condyne and EFP have business locations in Massachusetts, and the Freezer Project, the genesis of the instant dispute, is located in Massachusetts. See Pl. App. Ex.'s 1 and 2. Also, the Martin action, which is the lawsuit that Dacon and Condyne seek coverage for, is being litigated in the Commonwealth of Massachusetts. See Pl. App. Ex. 3. Hence, Massachusetts has the most significant relationship to the parties and the transaction in question.

Under Massachusetts law the interpretation of an insurance policy and the determination of the policy-dictated rights and obligations are questions of law, appropriate grist for the summary judgment mill. See Merchants, 143 F.3d at 8 (*citing* Assetta v. Safety Ins. Co., 43 Mass. App. Ct. 317 (1997)); Ruggerio Ambulance Serv. v. National Grange Ins. Co., 430 Mass. 794, 797 (2000).

## II. Travelers is Entitled to Summary Judgment on Count I, Declaratory Judgment.

The interpretation of an insurance contract is no different from the interpretation of any other contract, and the Court should construe the words of the policy in their

ordinary sense. See Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275,

280 (1997). An insurance policy (like any contract) should not be interpreted, however,

by acknowledging some words and phrases and ignoring others. See Sherman v.

Employers' Liability Assurance Corp., 343 Mass. 354, 357 (1961)(holding that an

interpretation which gives a reasonable meaning to all of the provisions of a contract is to

be preferred to one which leaves a part useless or inexplicable).

## a.     The Genesis Policy provides that Dacon and Condyne are additional insureds.

Dacon and Condyne are additional insureds covered by the Genesis Policy by

operation of the Blanket Additional Insured Endorsement. See Pl. App. Ex. 6, p. 26. As

noted above, the Additional Insured Endorsement provides that insureds on the Genesis

Policy include "any person or organization (called "additional insured") to whom you are

obligated by valid written contract to provide such coverage, but only with respect to

liability for "bodily injury" or "property damage" arising solely out of "your work" on

behalf of said additional insured for which coverage is provided by this policy." Id.

According to the Dacon – EFP Subcontract, EFP was obligated to provide

insurance coverage for Dacon and Condyne. See Pl. App. Ex. 1, p. 9. The claims against

Dacon and Condyne in the Martin action are claims for bodily injury arising solely out of

EFP's work; or "your work" as defined by the Genesis Policy. See Pl. App. Ex. 6.

### i.     The claims in the Martin action "arise out of" work performed by Martin (and his employer, SJV) for EFP.

It is settled in Massachusetts that the term "arising out of" in the context of

insurance policy interpretation refers to an intermediary causation standard; greater than

"but-for" causation and less than proximate causation. See Merchants, 143 F.3d at 9.

There is no dispute that the claims in the Martin action for bodily injury "arise out of" the work performed by Martin for EFP, and that in turn the work was being performed by EFP for Dacon. See National Union Fire Ins. Co. v. Lumbermen's Mut. Cas. Co., 385 F.3d 47, 52 (1st Cir. 2004); Pl. App. Ex. 4, *Dep. Transc. of Martin*, p. 16 ln. 19 – 22 and p. 32-40; Pl. App. Ex. 3.

Whether or not SJV or Martin proximately caused the accident alleged in the Martin action is irrelevant. See National Union, 385 F.3d at 50. The causal connection between the accident and Martin's work satisfies the intermediary causation standard. See id.; Pl. App. Ex. 3 at ¶ 23; Pl. App. Ex. 4 at p. 32-40. At the very least, no parties dispute that when the accident happened, Martin was within the general area where SJV was performing work for EFP, and that Martin's presence was directly related to SJV's work obligations. See National Union, 385 F.3d at 52 ("We hold that the policy's requirements were satisfied because the employees were injured within the general area where the subcontractor's work was being performed, and their presence there was directly related to their work obligations, even if the employees were merely traveling to or from work or to or from a lunch break."). In fact, Martin testified that his accident occurred while he was actually in the process of working, see Pl. App. Ex. 4, p. 40, consistent with the allegations in the complaint in the Martin action. See Pl. App. Ex. 3, ¶ 23. Genesis and TIG cannot seriously dispute that the accident alleged in the Martin action arose out of SJV's work for EFP (and in turn, EFP's work for Dacon).

Similarly, it is without dispute that the alleged accident arose out of "your work", or EFP's work, as the Genesis Policy defines the term (in both "Section V – Definitions" of the Commercial General Liability Coverage Form in the Genesis Policy and in the

9

"Classification Description" endorsement in the Genesis Policy). See Pl. App. Ex. 6 at pp. 19, 31. EFP contracted with SJV to perform the work connected with the installation of the "protectowire", which EFP contracted to perform for Dacon. See Pl. App. Ex. 4, p. 16 ln. 19-22; Pl. App. Ex. 1, p. 8; Pl. App. Ex. 3. As the alleged accident occurred while Martin performed this work, there can be no question that the accident arose out of "your work". See National Union, 385 F.3d at 50, 52 (holding that the purpose of the "your work" clause "is not to differentiate between those employees who were actually engaged in the work on a particular task when they were injured, as opposed to those who were idle or moving about the job site; rather, the provision is at least designed to cover injuries incurred in traversing the work area for which the subcontractor was responsible for performing work, that is, the subcontractor's general work area.").

      **ii.    The term "solely" in the Additional Insured Endorsement refers to EFP's work, not the cause of the alleged "bodily injury".**

The Blanket Additional Insured Endorsement in the Genesis Policy must be read in conjunction with the policy's "Classification Description" endorsement which by its express terms modifies the Additional Insured Endorsement. When the term "solely" (in the Additional Insured Endorsement) is read in conjunction with the definition of "your work" in the Classification Description endorsement it becomes clear that the exclusivity denoted by the word "solely" in the Additional Insured Endorsement relates to limiting coverage to injuries arising out of certain specific and listed aspects of EFP's business – "and no other" aspects of EFP's business. "[S]olely" refers to the specific work of EFP described in the Genesis Policy, rather than the cause of the alleged "bodily injury". In relevant part, the two endorsements read as follows:

10

| Broad Form Blanket Additional Insured Endorsement | Classification Description Endorsement |
|---|---|
| WHO IS AN INSURED (Section II) provision of the Policy is amended to include as an insured any person or organization (called "additional insured") to whom you are obligated by valid written contract to provide such coverage, but only with respect to liability for "bodily injury" or "property damage" **arising solely out of "your work"** on behalf of said additional insured for which coverage is provided by this policy.<br><br>See Pl. App. Ex. 6, p. 26 (emphasis supplied). | "Your Work" (Description)<br>94381-Fire Suppression Systems-Installation, Servicing or Repair and Sprinkler System Design Work<br><br>99996a-Broad Form Blanket Additional Insured<br><br>This Insurance applies only to "bodily injury," "personal injury", and "property damage" **arising out of the specific work described above, and no other. All of your other operations are specifically excluded** from coverage under the policy to which this endorsement is attached.<br><br>See Pl. App. Ex. 6, p. 31 (emphasis supplied). |

Considered together, it is clear that the definition of "your work" in the Classification Description modifies and clarifies the meaning of the term "your work" as it is utilized in the Blanket Additional Insured Endorsement. The Classification Description creates a boundary for coverage for EFP under the Genesis Policy, including a boundary for coverage for additional insureds. When read in conjunction with the Additional Insured Endorsement, it provides that insurance is only available for additional insureds for claims arising out of work performed for EFP which fits the Classification Description, "and no other" work or operations **of EFP**. In other words, coverage would not be available for additional insureds for claims against those potential additional insureds if the claims arose out of some other work performed by or for EFP – i.e., work that would not fit the specifically enumerated "Classification Description".

11

Dacon and Condyne are "additional insureds" because Mr. Martin's claims in the Martin action arise out of EFP's work: "Fire Suppression Systems-Installation, Servicing or Repair and Sprinkler System Design Work", as set forth in the Classification Description, "on behalf of said additional insured[s]" (Dacon and Condyne). See Pl. App. Ex. 6, pp 26, 31.

The term "solely" found in the Additional Insured Endorsement dovetails with the Classification Endorsement, providing that one would not qualify as an "additional insured" with respect to claims that arise out of some other work performed by or for EFP, i.e., work that would not fit under the enumerated Classification Description. To the extent that the claims are connected to or arise out of EFP's "Fire Suppression Systems-Installation, Servicing or Repair and Sprinkler System Design Work", and not any other work performed by or for EFP, additional insured coverage is available. If an interpretation of the Additional Insured Endorsement is not made in conjunction with the Classification Description and / or fails to take into account the entirety of the Classification Description, in particular the phrase "and no other", then that phrase would be useless.[4] The law does not favor an interpretation that renders a phrase useless. See Sherman, 343 Mass. at 357.

The Freezer Project involved numerous contractors and workers. See Pl. App. Ex. 10, *Dep. Transc. of Walch*, at p. 31. Like any large scale construction project, the different contractors performed their respective work in order to complete the Freezer Project. EFP's work with respect to the Freezer Project was set forth in the Dacon – EFP

---

[4] Indeed, the sentence that follows ("all of your [i.e., EFP's] other operations are specifically excluded from coverage…") makes clear that the exclusivity denoted by the phrase "solely" in the Additional Insured Endorsement relates to limiting coverage to injuries arising out of certain specific and listed aspects of EFP's business – "and no other" aspects of EFP's business.

12

Subcontract, and fit the "Classification Description" in the Genesis Policy. Martin, as an employee of EFP's subcontractor SJV, was doing EFP's work as set forth in the Dacon – EFP Subcontract, which, again, fit the "Classification Description" in the Genesis Policy, when he was injured. Hence, the claims arose "solely" out of "your work" as the term is defined by the Genesis Policy, i.e. it arose out of the "Fire Suppression Systems-Installation" aspect of EFP's business and did not arise out of some other work by or for EFP that was not listed in the Classification Description endorsement to the Genesis Policy. Because the claims in the Martin action arose solely out of Martin's performance of EFP's work that fit the Classification Description ("your work") and "no other" aspect of EFP's business, Dacon and Condyne qualify for "additional insureds" protection under the Genesis Policy with respect to the claims against them in the Martin action. This interpretation follows from the plain reading of not just part of the Genesis Policy, but all the related parts of the Genesis Policy in their usual and ordinary sense. See Hakim, 424 Mass. at 280.

Genesis apparently urges the Court to adopt an extraordinarily narrow interpretation of the phrase "arising solely out of 'your work'" – i.e., that additional insured coverage for Dacon and Condyne is precluded by the Additional Insured Endorsement if any other contractor, actor or outside influence had a causal connection to the claims at issue. See Anheuser-Busch, Inc. v. Empire Indemnity Ins. Co., 2003 Cal. App. Unpub. LEXIS 4963, at *6 (analyzing a nearly identical additional insured endorsement and holding "The word 'solely' in this endorsement emphasizes that AB is an additional insured only with respect to claims which are connected to HMI's work for AB. It does not require that the claim itself arise from HMI's negligence or other fault.

13

The causal connection required by the endorsement is to HMI's *work* for AB, not HMI's *fault*.")(emphasis in original).[5] See Pl. App. Ex. 10. If the Additional Insured Endorsement precluded coverage simply because another actor had some causal connection, however slight, to the injury at issue, then the qualification of "solely" would swallow the Additional Insured Endorsement, effectively making the Additional Insured Endorsement a nullity. Such an unreasonable construction should not be endorsed by the court. See The Jefferson Ins. Co. of N.Y. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 42 Mass. App. Ct. 94, 102-03 (1997).

In fact, if the term "solely" were construed to limit additional insured coverage to only those claims arising out of injuries caused solely and exclusively by the named insured, such that the involvement by any other contractor, actor, cause or outside influence in causing the accident would preclude coverage, then virtually no entity could ever achieve additional insured status – especially when considering that numerous contractors are present on a construction site working side by side (as was the case on the Freezer Project). Rarely if ever would an insurer actually be required to provide additional insured protection to a contractor pursuant to a so called "Blanket" Additional Insured Endorsement if any causal influence outside the specific work of EFP would defeat the entitlement to additional insured coverage. Such interpretation would run counter to the reasonable expectations of the parties and should be rejected by the Court. See Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993) (holding that it is appropriate "'to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'")(citation omitted).

---

[5] Although this case is listed as unpublished, its treatment of a similar additional insured provision is instructive.

14

Moreover, had Genesis desired to drastically limit additional insured coverage, such that
the additional insured coverage only extended to claims for bodily injury when EFP's
(the named insured's) work was the sole cause of the injury, without the influence of any
other cause whatsoever, Genesis, as the drafter of its policy, had every opportunity to
make that extreme limitation clear and explicit in its policy. See id. at 848-50. Having
failed to do so, Genesis should be required to provide the coverage that its policy
language indicates Dacon and Condyne are entitled to.

As a practical matter, on the typical construction project, it is rare that contractors
work totally independent of one another. Moreover, it would be highly unlikely for all
other influences, such as weather, lighting or other random occurrences, to be utterly
disconnected to an event on a construction site. If the potential additional insured were
forced to prove that the claims at issue arose out of a vacuum, caused "solely" by EFP's
work without the influence of any other causative factor(s), then the Additional Insured
Endorsement would rarely if ever provide the protection expected by both the named
insured and the additional insured in the usual context of construction project related
injuries.

The logical construction of the term "solely" in the context of the Additional
Insured Endorsement (modified as it expressly is by the "Classification Description"
endorsement) is that it provides additional insured coverage only for those claims that
arise out of work being performed by or for EFP which fits the Classification
Description. There is no debate that Martin was performing work for SJV; that SJV was
performing work for EFP; and that EFP was performing work for Dacon, all of which fell
within the Classification Description set forth in the Genesis Policy. See generally Pl.

15

App. Ex. 3; Pl. App. Ex. 1; Pl. App. Ex. 4 p. 16, ln. 19-22. Hence, the claims against
Dacon and Condyne trigger coverage for Dacon and Condyne pursuant to the Additional
Insured Endorsement.

For that reason, it does not matter what percentage of negligence or "causal
influence" is attributed to the various other parties involved in the Martin action. The
analysis with respect to the term "solely" in the Additional Insured Endorsement focuses
on whether or not the work performed for EFP fit the Classification Description. There is
no reasonable dispute that the claims in the Martin action in that sense arise "solely" out
of work for EFP as defined in the Classification Description, "and no other". Hence,
regardless of what percentages of negligence or "causal influence" may ultimately be
allocated to parties other than EFP, SJV or Martin[6] in the conclusion of the Martin action
and regardless of whether acts or omissions by other contractors may also have been a
cause of Martin's accident, Genesis owes a duty to defend and indemnify Dacon and
Condyne pursuant to the Additional Insured Endorsement.

**b.    In any event, the claims set forth in the Martin action triggered
Genesis' duty to defend Dacon and Condyne, and Genesis breached
its duty to defend.**

In Massachusetts, liability insurers have a duty to defend their insureds when
allegations in the complaint are reasonably susceptible to an interpretation that may state
a claim covered by the policy. See Brazas Sporting Arms, Inc. v. American Empire
Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000); Dash v. Chicago Insurance Co.,
2004 U.S. Dist. LEXIS 17309, at *17 (D. Mass.). The allegations in the complaint in the
Martin action allege that Martin was injured while performing the work that EFP

_____

[6] The Genesis Policy defines "your work" as including work done by EFP "or on its behalf". As Martin
and his employer, SJV, were performing work subcontracted to them by EFP, their efforts constituted work
done "on behalf of" EFP.

16

promised to perform for Dacon, and the work as described in the complaint fits the description of "your work" in the Genesis Policy's Classification Description endorsement. See Pl. App. Ex. 3, ¶¶ 12-15; Pl. App. Ex. 6, p. 31.

It is clear that the touchstone of any inquiry by this Court into the duty to defend is that the duty to defend is broader than the duty to indemnify. See Ruggerio Ambulance Service, Inc. v. National Grange Ins. Co., 430 Mass. 794, 796 (2000)(emphasis added). If the allegations in the complaint adumbrate a covered claim, the duty to defend is triggered. The complaint need only show a possibility of coverage to give rise to the duty to defend. See id. (emphasis added).

Even if, as Genesis suggests, there is a question in the instant insurance coverage dispute as to whether Dacon and Condyne are additional insureds (and Travelers states emphatically that there is no such question because Dacon and Condyne are additional insureds by the plain language of the Genesis Policy as set forth above, supra), that question would not abrogate Genesis' obligation to provide a defense to Dacon and Condyne as additional insureds in the Martin action. Genesis' duty to provide a defense to Dacon and Condyne is triggered because "the allegations of the complaint [in the Martin action] are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms [the Genesis Policy]". Dash 2004 U.S. Dist. LEXIS 17309, at *17 (citations omitted). To avoid its obligation to defend Dacon and Condyne, Genesis would have to establish that there is no possibility that there is coverage for Dacon and Condyne under the Genesis Policy. Genesis cannot do so, and therefore is in breach of its duty to defend.

Genesis apparently posits that the term "solely" in the Additional Insured

Endorsement precludes coverage if Martin's claims in the Martin action arise from the
conduct of other entities[7] (which, as set forth above, supra, Travelers argues would not
preclude coverage and actually does not bear on the instant insurance coverage dispute).
Assuming, *arguendo*, Genesis' interpretation is correct (which Travelers vigorously
denies), it would still require a final adjudication of the underlying Martin action to
finally determine whether or not there is coverage for Dacon and Condyne. Specifically,
because Genesis has taken the position that the injury at issue did not arise solely out of
its insured's work, and highlights that this particular issue is being litigated in the Martin
action, Genesis has conceded that there is "at least a possibility" that the injury arose
solely out of its insured's work. See Pl. App. Ex. 8. In fact, to the extent that Genesis
believes that the instant insurance coverage dispute should be stayed because the Martin
action might have some bearing on its outcome, Genesis has conceded that there is a
possibility that the Genesis Policy will ultimately provide additional insured coverage.
See Pl. App. Ex. 8. It is inconsistent to argue on one hand that the Martin action bears on
the instant insurance coverage dispute and on the other hand that Genesis has no duty to
defend.

In contrast, it is Travelers' position that the outcome of the Martin action has no
bearing on the instant insurance coverage dispute. Regardless of whether other entities or
contractors are ultimately found to have "caused" the injury in the Martin action, Dacon
and Condyne are additional insureds pursuant to the Genesis Policy's Additional Insured
Endorsement for the reasons stated above, supra. The term "solely", which Genesis

---

[7] See Pl. App. Ex. 8, Defendant, Genesis Indemnity Insurance Company's List of Deponents and
Impending Motions, p. 3 (stating "It is Genesis Indemnity's position that the injury at issue did not arise
solely out of its insured's work. In fact, this very issue is being litigated in the underlying personal injury
case currently being adjudicated in the Massachusetts State Court (Civil Action No. BRCV2002-
00168…)".).

18

clings to, provides Genesis no support. If the term "solely" refers to a causal connection or to "fault", then a decision on coverage cannot be made until there is a final adjudication on the merits. As there has not been a final adjudication on the merits, Genesis is currently in default of its obligation to provide a defense to Dacon and Condyne (per Genesis' rationale). The argument espoused by Genesis only proves that Genesis breached its duty to defend Dacon and Condyne.

Put succinctly, where the possibility of a covered claim exists, Dacon and Condyne are entitled to a defense from Genesis. See Ruggerio, 430 Mass. at 796; see also Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15-16 (1989). If Genesis is correct that the outcome of the underlying Martin action will determine whether Dacon and Condyne are entitled to additional insured status under the Genesis Policy, (which, again, Travelers expressly denies), then Genesis has at the very least (and by the rationale and force of its own argument) breached its duty to defend.[8] See Merchants, 143 F.3d at 9 (holding that "it is plain that the allegations in Woundy's Complaint raised the potential for policy coverage, triggering USF&G's duty to defend. And the line of Massachusetts cases referred to earlier teach that USF&G's dishonor of that duty to defend triggered USF&G's additional duty to indemnify."). "An insurer must tread cautiously regarding its duty to defend an insured against third-party actions in view of the expansive interpretation given to that duty." Rubenstein v. Royal Ins. Co. of America, 429 Mass. 355, 360 n. 4 (1999).

Genesis has unjustifiably disclaimed its defense obligations and is in breach of its duty to defend.

---

[8] See Pl. App. Ex. 8, Defendant, Genesis Indemnity Insurance Company's List of Deponents and Impending Motions.

19

     c.     **Even if, *arguendo,* the Court were to rule that Genesis' interpretation of the Additional Insured Endorsement is reasonable, the Additional Insured Endorsement would therefore be ambiguous, i.e. susceptible of two reasonable interpretations, and judgment should nonetheless enter for Travelers on Count I.**

"[W]here 'there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it.'" Trustees of Tufts Univ., 415 Mass. at 849 (citation omitted). For reasons outlined above, supra, Genesis cannot proffer a reasonable interpretation of the Additional Insured Endorsement, justifying Genesis' breach of its duty to defend and indemnify Dacon and Condyne. Even if the Court were to rule that Genesis' proffered interpretation of the Additional Insured Endorsement is reasonable (and would support a finding of no coverage for Dacon and Condyne), Travelers has (at the very least) also articulated a competing reasonable interpretation of the Additional Insured Endorsement and the Court should still rule in favor of Travelers in the instant insurance coverage dispute. It is axiomatic that in the case of ambiguous insurance policy terms, one interpretation resulting in coverage and the other resulting in denial of coverage, the Court must construe the ambiguous language in favor of the insured and in favor of coverage. See Boston Symphony Orchestra, 406 Mass. at 12.

## CONCLUSION

Genesis (and to the extent the policy limits of the Genesis Policy are exhausted, TIG) has improperly denied the tender of the defense and indemnification of Dacon and Condyne, and hence Genesis is in breach of its duty to defend. Based on the points, authorities and arguments advanced above, supra, Dacon and Condyne are additional insureds covered by the Genesis Policy and are entitled to a defense and indemnification

20

in the Martin action.  The Plaintiff in this action respectfully requests that this Honorable

Court enter and Order **ALLOWING** the Plaintiff's Motion for Summary Judgment on

Count I of the Complaint.

**TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA (FORMERLY
KNOWN AS THE TRAVELERS
INDEMNITY COMPANY OF ILLINOIS)
INDIVIDUALLY AND A/S/O DACON
CORPORATION AND CONDYNE
VENTURES, LLC
By its Attorney,**

**Richard J. Riley, BBO#420610
William P. Mekrut, BBO#654350
MURPHY & RILEY, P.C.
141 Tremont Street
Boston, MA 02111
Ph.: 617-423-3700
Fx.: 617-423-1010
Email: RRiley@MurphyRiley.com
Email: WMekrut@MurphyRiley.com**

CERTIFICATE OF SERVICE

I Hereby Certify That On This Day
A True Copy Of The Within Document
Was Served Upon The Attorney Of
Record For Each Party By Mail/Hand
Dated: 11/1/05