UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11490 JLT

TRAVELERS PROPERTY CASUALTY )
COMPANY OF AMERICA (FORMERLY )
KNOWN AS THE TRAVELERS )
INDEMNITY COMPANY OF ILLINOIS) )
INDIVIDUALLY AND A/S/O DACON )
CORPORATION AND A/S/O )
CONDYNE VENTURES, LLC., )
    Plaintiff )
)
vs. )
)
GENESIS INDEMNITY INSURANCE COMPANY )
And TIG INSURANCE COMPANY, )
    Defendants )
)

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants, Genesis Indemnity Insurance Company ("Genesis") and TIG Insurance Company ("TIG"), oppose the Plaintiff's Motion for Summary Judgment on Count I of the Complaint on the following grounds:

1.    Genesis recently moved to join indispensable parties to this litigation, the joinder of which would destroy subject matter jurisdiction by this Court. Plaintiff's Motion for Summary Judgment is premature in that there are other parties with significant interests and whose presence is necessary. Defendants incorporate herein the arguments set forth in that Motion To Join Indispensable Parties Which Destroys Diversity Jurisdiction Requiring Dismissal Or Remand Or, In The Alternative, Motion To Stay This Case Pending Resolution Of The Underlying Case and related Memorandum and Exhibits.

2.    Genesis is not obliged to provide coverage to, and does not owe a duty to defend and indemnify Travelers' insureds in the Underlying Action pursuant to the Additional Insured Endorsement.

    a.    The terms of an insurance policy must be given their proper, ordinary meaning within the context of the contract. "Solely" in the additional insured clause of the insurance contract modifies and heightens

the intermediate causation requirement in order to trigger the additional insured clause.

    b.    Using that heightened intermediate causation test, it is clear that Genesis/TIG do not have a duty to provide coverage in the Underlying Action.

    c.    Even if an intermediate standard of causation is used, plaintiff cannot prove that the injury triggers the application of the Broad Form Additional Insured Agreement of the Genesis Policy.

    d.    As the language of the Broad Form Blanket Additional Insured Endorsement is clear and not ambiguous, Travelers is not entitled to have the clause interpreted in its favor.

3. The Genesis policy specifically excludes the claim brought in the Underlying Martin Action, as such, there is no duty to defend owed to Travelers. The claim Travelers seeks defense for is specifically excluded from coverage by the Genesis policy.

## FACTUAL BACKGROUND[1]

This action arose as the result of a construction site accident at the Condyne Freezer Building in Taunton Massachusetts on January 3, 2001 ("Freezer Project"). An electrician, Michael Martin, fell as he attempted to climb the freezer racks in the building. He subsequently brought suit against the owner of the building, Condyne Ventures, LLC ("Condyne"), and the general contractor, Dacon Construction Company ("Dacon"), alleging failure to maintain a safe work place.

Martin, the plaintiff in the underlying complaint, reported with his supervisor, Scott Viveiros ("Viveiros"), to the Freezer Project at 7 a.m. on January 3, 2001. Pl. App. Ex. 4 at p. 23; Def. App. Ex. 2, p. 9. The Project was behind

---

[1] The facts in this section are drawn from the Statement of Material Undisputed Facts Pursuant to L.R. 56.1 ("Statement of Facts") and Defendants' Response and Statement of Material Undisputed Facts. As required under summary judgment procedure, the undisputed facts must be interpreted in favor of the non-moving party. In stating the undisputed material facts, the defendants do not concede or rely on these facts for any purpose other than this motion for summary judgment.

schedule and Condyne was pushing Dacon to complete it as soon as possible. Condyne had a contract for storage of "French fries" that was effective December 31, 2000. Dacon, in turn, was pushing the subcontractors to work long hours and weekends to get the Project done.

Martin and Viveiros were unable to get their lift in the building on January 3, 2001 at 7:00 a.m. They were unable to borrow another contractor's lift as they were all being used. Pl. App. Ex. 4, pp. 25-26. The Dacon supervisor, Mike, told them that everything was being used and that they'd have to come back after hours to finish their work. Pl. App. Ex. 4, pp. 26-27; Def. App. Ex. 2, p. 10. The work to be performed by Martin and Viveiros also could not be performed when so many other contractors were on site. Def. App. Ex. 2, p. 71.

As instructed by Dacon, Martin and Viveiros returned after hours, to do their work alongside a section of freezer racking called Phase I. Def. App. Ex. 1, p. 27. In order to do his work, Martin had to climb the racks. Def. App. Ex. 2, pp. 11, 36, 38-39, 65-69. He climbed up the racks to about 20 feet and took a step to the middle of the rack structure. As he stepped on the flat section of racking, it moved and he fell. Pl. App. Ex. 4, p. 40. He was not wearing fall protection.[2]

The racking was designed and manufactured by Frazier Industrial Company ("Frazier") pursuant to a contract with Condyne. Def. App. Ex. 3, p. 10. Frazier contracted with JJS Construction, Inc. ("JJS") for the installation of the rack structure. Id., p.12.

---

[2] Other trades worked in the racks without fall protection. Pl. App. Ex. 4, p. 34; Pl. App. Ex. 9, p. 134.

At the time Martin fell, there were no signs or warnings from the subcontractor, JJS, indicating that the racking was not completed or secure in that area. Def. App. Ex. 1, pp. 27, 28. JJS relied upon the general contactor, Dacon, to tell subcontractors whether the racks were completed or whether they should stay off the racks. Id., p. 28. But, this is contrary to Frazier's required procedure that JJS complete the rack installation row by row, releasing each to Condyne as it was completed. Def. App. Ex. 3, p. 137. The Frazier Proposal for the racking with Condyne required that Condyne sign off on each row after installation before allowing any access to other trades. Condyne failed to do so. Id., p. 122.

JJS, the racking contractor, worked at the site on January 3rd until approximately 6:00 p.m. The general contractor, Dacon, did not have a construction supervisor on site that evening even though it was aware that JJS was working after hours, without supervision. Def. App. Ex. 1, pp. 42-44, 53-55. Further, Dacon did not hold periodic safety meetings with all subcontractors regarding safety issue on the job. Martin and Viveiros never attended any such meeting. Pl. App. Ex. 4, p. 35; Def. App. Ex. 2, p. 87. Rather, the first safety meeting held by Dacon was on January 17, 2001, fourteen days after Martin fell. Pl. App. Ex. 9, pp. 47, 48.

Dacon's company policy was not to allow subcontractors into an area unless it was inspected and okayed by Dacon. Dacon supervisors failed to enforce this policy. Pl. App. Ex. 9, pp. 37. If an area were not safe to work in, it was supposed to be marked with caution tape by Dacon or stipulated to in meetings. Pl. App. Ex. 9, pp. 37, 38.

4

After Martin's fall, the subcontractor, JJS, worked in the racks where he fell, tightening bolts and tidying up. JJS had failed to secure members of the racking system when it left the job on the day Martin fell. Def. App. Ex. 2, p. 74; Def. App. Ex. 4, p.118.

The Freezer Project was a "fast track" job; a great deal of work had to get done in a short period of time. There was pressure to get the job done. Def. App. Ex. 2, p. 78, 79; Def. App. Ex. 4, pp. 65-69. In fact, on January 2, 2001, two days before Martin fell, Condyne demanded to know when they could take occupancy. Def. App. Ex. 4, pp. 64, 70. Condyne repeatedly told Dacon that they expected Dacon to meet the December 31, 2000 deadline and repeatedly expressed dissatisfaction about construction delays. Id., pp. 70-71, 72-73. Dacon, in turn, instructed its subcontractors to continue working long days and weekends. Id., p. 83. Condyne repeatedly called Frazier in late December 2000 and January 2001 instructing them to get the job done. Id., pp. 87-89.

Condyne did not believe that the rack installation needed to be complete prior to the sprinkler contractor using the racking system to install the fire protection system. Def. App. Ex. 4, p. 89. Condyne believed that the installation of the sprinkler system could be accomplished at the same time the racks were being installed.

Dacon had overall responsibility with regard to maintaining job site safety. Def. App. Ex. 4, pp. 30, 49. Condyne took no steps to ensure that Dacon was enforcing safety measures on the job site. Def. App. Ex. 4, p.102. It is expected that, given an opportunity to conduct the discovery outlined in the Status Conference Report, experts will testify regarding the failures of the owner, general contractor and subcontractors working at the site.

## ARGUMENT

A.  **Travelers is Not Entitled to Summary Judgment in its Favor on Count I.**

I.  **The Term "Solely" In The Additional Insured Clause Of The Insurance Contract Modifies And Heightens The Causation Requirement For The Additional Insured Clause To Become Effective and, As Such, Genesis Owes No Duty To Provide Coverage for Dacon or Condyne in the Underlying Action.**

### A. The Term "Solely" Must Be Given Its Proper, Ordinary Meaning Within The Context Of The Contract.

The key dispute in this case is whether the phrase "arising solely out of your work" serves to exclude Dacon and Condyne (and hence Travelers) from coverage as an additional insured under the Genesis policy. The word "solely" clearly serves to limit and modify the meaning of the phrase "arising out of" as it is used in the Genesis contract, but the plaintiff urges that the word "solely" essentially be read out of the contract.

However, under Massachusetts law, insurance contracts are construed under the general rules of contract interpretation. Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). When looking at the contract, the Court must "read the policy as written. [The Court is] not free to revise it or change the order of the words." Trustees of Tufts University v. Commercial Union Ins. Co., 415 Mass. 844, 849, 616 N.E.2d 68 (1993), quoting Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 147, 461 N.E.2d 209 (1984). As such, despite plaintiff's efforts to argue to the contrary, this Court must recognize and give the proper meaning to the word "solely," which serves to raise the level of causation needed to implicate the additional insured clause of this contract.

### B. The Term "Solely," When Given Its Proper Meaning Within The Contract, Modifies and Heightens The Causation Standard Used For Insurance Coverage Disputes.

#### 1. An Intermediate Standard of Causation is Applied to "Arising Out of" Language in this Circuit.

The plaintiff properly notes that the term "arising out of," as used in insurance contracts, triggers "an intermediate causation standard" and one that is greater than "but-for" causation. Plaintiff's Memorandum of Law ("Plaintiff's Brief"), p. 8. But, the plaintiff, in interpreting the phrase "arising out of your work" in this case then advocates for application of a "but for" standard -- basically arguing that, but for Martin's presence on the site which was occasioned by his employer's subcontract with EFP, he would not have been injured. This simply is not consistent with this Circuit's case law and the intermediate causation standard.

Importantly, the phrase used in the contract at issue is not "arising out of," but rather "arising **solely** out of." (Emphasis added). As such, the "intermediate causation standard" as it has been applied in Massachusetts, discussed further below, is not determinative of the outcome but is a jumping off point for the Court's analysis. The word "solely," placed in the middle of a commonly used and understood phrase in insurance contracts, must be read to modify the traditional meaning of the phrase, and raise the level of causation needed before the additional insured clause becomes effective.

#### 2. The Word "Solely," When Given Its Plain Meaning, Modifies and Heightens The Intermediate Causation Standard, to a Heightened Proximate Cause Standard.

The intermediate causation test, as applied to insurance coverage disputes in this Circuit, "denotes a level of causation that *lies between proximate and actual*

7

causation." Merchants Ins. Co. of New Hampshire, Inc. v. United States Fidelity and Guaranty Co., 143 F.3d 5, 9 (1st Cir. 1998) (emphasis added). An additional insured then undisputedly must show more than "but-for" the presence of the subcontractor the injury would not have occurred; instead they must prove that "the injury was a *consequence* of the work that [the subcontractor] was performing." Id. at 10 (emphasis added). In Merchants, an injury was held to fall within the intermediate standard of causation when the subcontractor's employee was injured as a result of performing the work the subcontractor agreed to perform. Id.

As noted, in Merchants, the First Circuit was interpreting the phrase "arising out of." Here, that term has been modified by the word "solely." The word "solely" is defined as meaning "1: without another; 2: to the exclusion of all else." Merriam-Webster Online Dictionary (2005). Giving the word "solely" its proper meaning, as is required in contract interpretation; it can only serve to further limit the application of the additional insured clause. As such, it is clear that the phrase "arising solely out of your work" implicates a higher test of causation and imposes a stricter causal connection than the phrase "arising out of." This interpretation is in keeping with the reasoning of Merchants. In fact, this is the only interpretation that does not completely nullify the meaning of the word "solely." Because the word "solely" limits the phrase "arising out of" and heightens the level of causation necessary to activate the additional insured clause, there cannot be summary judgment for the plaintiff on the declaratory judgment action.

Travelers contests this interpretation of "arising solely out of your work" by citing an unpublished decision of a California court in Anheuser-Busch, Inc. v.

Empire Indemnity Ins. Co., 2003 WL 21186297 (Cal. App. 2 Dist.).[3] While acknowledging that the case is unpublished, the plaintiff fails to disclose that, unlike the courts here, California courts have stated that the term "arising out of" "does not import any particular standard of causation." California then certainly does not subscribe to and apply the intermediate causation test required under Massachusetts law to invoke liability under "arising out of" language of an additional insured provision. In fact, the language cited by Travelers from Anheuser-Busch quotes and relies upon a case that has been determined by the First Circuit as being inconsistent and inapplicable to the intermediate test - -- the prevailing standard under Massachusetts's law. See National Union Fire Ins. Co. of Pittsburgh v. Lumbermen's Mutual Casualty Co., 385 F.3d 47, 51 fn. 1 (1st Cir. 2004) (stating that the cases cited by appellant were inapplicable because they "apply a less stringent standard of causation than the intermediate causation required by Merchants Insurance," including Acceptance Ins. Co. v. Syufy Enters. 69 Cal.App.4th 321 (1999)); see also Anheuser-Busch Inc. v. Empire Indemnity Ins. Co., 2003 Cal. App. Unpub. LEXIS 4963, at *6-7 (citing to Syufy). As such, the reasoning of Anheuser-Busch does not apply to and is not instructive in the case at bar.

Further, the plaintiff's tortured argument that the "Classification Description" somehow modifies the Additional Insured Endorsement and limits the meaning of the word "solely" is without basis. First, the Classification Description Endorsement does not state that it modifies the "additional insured" language of the policy in any respect and should not be read as such. The

---

[3] This case is designated on Westlaw as "no longer good for at least one point of law" but it is not clear which point of law.

9

Classification Description Endorsement serves a limited purpose. Further, the plaintiff's argument that this limited Endorsement somehow alters the Additional Insured Endorsement simply doesn't make sense.

Travelers argues that, by reading these two endorsements together, the phrase "arising solely out of your work" in the Additional Insured Endorsement somehow must be construed as saying that Dacon and Condyne can be additional insureds only for claims arising out of "your work" as defined in the Classification Description Endorsement, apparently as opposed to some *other* work by EFP. But, if that were the intent and meaning, it would not have been necessary to even use the word "solely" in the Additional Insured Endorsement. The phrase "arising out of your work" alone would have sufficed inasmuch as the Classification Endorsement describes the term "your work" and states that no other work was included in the coverage.[4]

Contrary to plaintiff's argument, reading these two endorsements together then simply highlights that the word "solely" was specifically and purposely added to this section of the Additional Insured Endorsement-- for a reason; namely to limit it.[5] The term must be given its ordinary meaning, and not be ignored or nullified as the plaintiff suggests. 2 Couch on Ins. § 22:43 (since it must be assumed that each word contained in an insurance policy is intended

---

[4] Travelers' interpretation begs the question – if "solely" refers merely to "your work" pursuant to the subcontract, then does the omission of that word mean that a general contractor can receive coverage for liability for any claims from any work, even that not related to the subcontract? Such an interpretation is unreasonable and is undoubtedly against public policy.

[5] So, too, does the fact that the phrase "arising out of" appears in other sentences of the Additional Insured Exclusion, but that the word "solely" was particularly added to that sentence describing the scope of coverage for an additional insured.

to serve a purpose, every term will be given effect by any reasonable construction).

"Arising out of" has been "understood to mean 'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'" Brazas, 220 F.3d at 7 and cases cited. "Solely" is defined to mean "to the exclusion of all else." Merriam-Webster Online Dictionary. Put together, "arising solely out of" must mean *originating out of* their actions *to the exclusion of all else*. Thus, the logical conclusion is that the phrase "arising solely out of" in the context of the additional insured section of the Genesis policy was intended to limit coverage pursuant to that section. Injuries arising from the negligence of others on the job site does not require Genesis and TIG to extend coverage to Dacon or Condyne.

Travelers argues that "if the term 'solely' were construed to limit additional insured coverage so as not to include liability arising from the involvement of any other contractor, actor, or cause "then virtually no entity could ever achieve additional insured status – especially when considering that numerous contractors are present on a construction site...." Plaintiff's Brief, p. 14. But, certainly if a party wishes to limit coverage under an Additional Insured Endorsement, it may do so and is free to draft a policy with qualifying language expressing that intention, and the plaintiff recognizes as much. Merchants, supra at 10; Plaintiff's Brief, p. 15. The defendants did that here, by adding limiting language.[6] The fact there are numerous contractors and workers on a given site, all of who are performing their respective work, may well have prompted the

---

[6] Indeed, the plaintiff acknowledges that the addition of the phrase "sole cause" would have limited additional insured coverage. Plaintiff's brief, p. 15.

11

inclusion of such language limiting the additional insured coverage.

Also, contrary to the plaintiff's argument otherwise, even with a limiting term, "if the policy still provides coverage for some acts, it is not illusory simply because of a potentially wide exclusion." Bagley v. Monticello Ins. Co., 430 Mass. 454, 459, 720 N.E.2d 813 (1999). The policy here limits the additional insured coverage but clearly does not exclude all scenarios under which Condyne and Dacon could become additional insureds.

### C. It Is Clear That Genesis/TIG Do Not Have A Duty To Provide Coverage For The Underlying Action.

It is black letter law that proximate cause prevents liability from attaching solely as a result of "but-for" causation. Kent v. Commonwealth, 437 Mass. 312, 320, 771 N.E.2d 770 (2002). Here, there is an even more heightened test, and Travelers will need to show that Martin's injury arose solely out of EFP's work pursuant to the subcontract, and that there were no other factors that more accurately caused the injury. It can do neither as is illustrated above and by reference to Defendants' Statement of Undisputed Facts.

#### 1. Negligent Performance By the Owner, the General Contractor and Other Subcontractors Resulted in the Injury.

Pursuant to their subcontract with general contractor Dacon, EFP was required to install the fire protection system for the Freezer Project. EFP, along with its subcontractor, SJV, installed this fire protections system professionally and competently. Indeed, there are no allegations that EFP was negligent in the performance of its duties.

Instead, the injury at issue in the underlying case occurred when an SJV employee, Martin, fell after losing his balance when a pallet, a portion of the

racking system, moved when he stepped on it. JJS, the subcontractor installing the system was under pressure to complete the rack installation as their failure to do so was holding up other trades. On the day of the accident, JJS worked until 6:00 p.m., but failed to secure all members of the rack system already installed. The day after the accident, JJS went back over the section of racking where Martin fell and tightened all the connections and "tidied up".

This racking system was the responsibility of JJS, a subcontractor of Frazier. Frazier had contracted directly with the owner of the project, Condyne, bypassing the general contractor Dacon.[7] Condyne was obligated to inspect and sign off on each section of racking installed by JJS before other contractors could work in that area. Condyne did not do so.

Dacon testified that it was its company practice to use caution tape to rope off areas that were not safe to work in or to announce this in job meetings. There was no caution tape at the site where Martin was injured and Martin and his boss Viveiros never attended any job meetings where subcontractors were told where they could and could not work. In fact, on the day in question, Martin and Viveiros arrived at the job site early in the morning only to be told they could not complete their work due to the congestion at the site and lack of proper materials. Dacon instructed them to return after hours, which they did. There was no Dacon supervisor present then.

It is undisputed that EFP and SJV did not take part in the installation or oversight of the freezer racks. Rather, any liability of Dacon and/or Condyne for

---

[7] The factual and legal complexity of the parties involved in the underlying case, combined with the myriad of different positions and arguments made by each, strongly argues for the joinder of all such involved parties in the underlying personal injury action to the case at bar. See Defendants Motion to Join Indispensable Parties.

13

Martin's injuries would appear to arise from work other than that of EFP including the negligent installation of the freezer racks, the improper construction site management practices, and the owner's insistence that work be accelerated.[8] Clearly, applying the heightened causation test, it cannot be said that the injury arose *solely* as a result of the work of either EFP or SJV. Thus, Dacon and Condyne do not become additional insureds under the Genesis policy. The plaintiff is not entitled to summary judgment.

### III. Even Under Travelers' Analysis, It Cannot Prove That The Injury Triggers The Application Of The Broad Form Additional Insured Agreement.

Even under Travelers' interpretation of the additional insured clause (which interpretation Genesis and TIG vigorously dispute), it still cannot show that Dacon and Condyne qualify as additional insureds thereunder. It argues that it can show that "but for" Martin's presence at the jobsite, this accident would not have occurred. However, as noted, this is not the test under Massachusetts law, and cannot satisfy the Plaintiff's burden in proving its motion for summary judgment. Rischitelli v. Safety Ins. Co., 423 Mass. 703, 704, 671 N.E.2d 1243 (1996). See also Merchants, 143 F.3d at 9 (incorporating the Rischitelli Court's statement into the context of an insurance contract dispute between the subrogees of a general contractor and subcontractor).

In Rischitelli, the Supreme Judicial Court held that insurance coverage was not available to a driver who was injured when, after an automobile

---

[8] The speculation involved in this analysis is in large part due to the premature nature of this summary judgment motion. Should the Court chose to stay resolution of this motion until after the underlying case is resolved, the disposition of this declaratory judgment action will become infinitely more definite, and ease the strained analysis of all sides resulting from arguing facts which have not been fully adjudicated.

14

accident, the other driver physically attacked him and drove away. Id. at 703-704. The issue in that case was whether the injury could be seen as "arising out of the use of an automobile." Id. at 704. The Court concluded, "[t]he battery on the plaintiff was sufficiently independent of the motor vehicle accident." Id. at 707.

Similarly, the injury to Martin was "sufficiently independent" of EFP's work pursuant to the subcontract. The key here is that the event causing the injury – the negligent installation of the freezer racks – was in no way related to "your work" as defined in the EFP – Dacon contract. As such, there is no way to view the events as arising in any way from EFP's actions, even if the lower intermediate test is applied. EFP was not involved in the installation of those racks or in the oversight of such installation. A contrary holding would allow Dacon and Condyne to escape liability when their actions directly led to the injury of the employee of its subcontractor. Such a result would not only be incorrect as a matter of law, but would also run contrary to public policy.[9] As such, summary judgment should not be granted on Count I.

---

[9] Evidence of this general public policy can be seen in M.G.L. c. 149 § 29C, limiting the ability of general contractors to require indemnification from a subcontractor when the subcontractor has no responsibility for the injury, and M.G.L. c. 186 § 15, prohibiting landlords from obtaining indemnification from tenants when the landlord is negligent. See Joseph P. Musacchio, Contribution and Indemnity, Massachusetts Tort Law Manual § 16.2.3 (2005). While neither is directly relevant to the question of whether a subcontractor is required to provide insurance coverage when the policy language clearly excludes liability not caused by the subcontractor, these statutes are evidence of a general legislative policy against powerful parties – landlords and general contractors – escaping responsibility for injury by shifting their loss to those parties dependent on them for economic well being (tenants and subcontractors, each of whom must rely on the former to provide them with either shelter or employment).

IV. **The Genesis Policy Specifically Excludes The Claim In The Underlying Martin Action And, As Such, There Is No Duty To Defend Owed.**

   A. **The Claim At Issue Is Specifically Excluded From Coverage By The Genesis Policy.**

As Travelers notes in its brief, Massachusetts law generally imposes upon insurers a broad duty to defend its insureds. Open Software Foundation, Inc. v. United States Fidelity and Guarantee Co., 307 F.3d 11, 14 (1st Cir. 2002). However, this general rule is superceded by the rule that an insurer has "[n]o duty to defend a claim that is specifically excluded from coverage." Metropolitan Property and Casualty Ins. Co. v. Fitchburg Mutual Ins. Co., 58 Mass. App. Ct. 818, 820, 793 N.E.2d 1252 (2003). In this case, because Genesis specifically excluded the type of claim brought by Martin in the underlying action, there is no duty to provide defense.

The fifth paragraph of the Broad Form Blanket Additional Insured Endorsement states that:

> It is the intent of this endorsement to exclude all claims, demands or suits arising out of any "bodily injury" or "property damage" to which this insurance does not apply. There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate, or indemnify anyone for any such claims, demand or suit.

Plaintiff's Ex. 6.[10] Clearly, Genesis has disclaimed responsibility for the defense of suits against Dacon and Condyne for which it does not have an explicit duty under the contract to defend. Furthermore, when read with "solely," the Genesis policy clearly indicates that if EFP did not solely cause the harm, there was no

---

[10] Note that in this context Genesis uses the term "arising out of" to clearly indicate a broad range of causation. This is further evidence that Genesis intended to limit the required causation necessary to trigger the additional insured provision.

duty to defend. While the duty to defend may be broad, it cannot go so far as to encompass claims specifically excluded from coverage by the contract.

> **B.   An Examination Of The Complaint In The Underlying Personal Injury Action Reveals That There Is No Claim Stated That Genesis Would Be Required To Defend Under The Policy.**

An insurer's duty to defend is "based on the facts alleged in the complaint." Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 10-11, 545 N.E.2d 1156 (1989). An insurer need only "accept a tender of a defense if the complaints state or adumbrate a covered claim." Open Software Foundation, Inc. v. United States Fidelity & Guar. Co., 307 F.3d 11, 14-15 (1st Cir. 2002). In this case, the underlying Martin complaint states only that there is a tort claim arising out of the negligent installation of the freezer racks. Because there is no allegation that EFP was in any way responsible for those injuries, there can be no claim that Genesis is liable for the defense of Dacon or Condyne.

An analysis of the complaint reveals that EFP was not implicated in the suit against Dacon and Condyne. Overall, the Martin complaint sounds in negligence against Dacon, Condyne and Frazier, but does not make allegation that EFP was in any way at fault. Martin's theory of the case is simple – "[p]ersons acting on behalf on Dacon, Condyne or Frazier placed crosspieces within the racking system at or near their intended final placement, but failed to bolt the crosspieces in place before leaving the workplace." Martin complaint at 22. It is undisputed that there was no contractual privity between EFP and Frazier, such that EFP would in any way be responsible for Frazier's negligence. Nor is there any indication that Martin's injuries arose "solely from your work." Read together, the complaint alleges negligence against Frazier, and its superiors Dacon and Condyne. There are simply no allegation that EFP did anything

17

wrong, and as such no duty for the defendants to defend Condyne or Dacon in the underlying action.

### C. As The Language Of The Broad Form Blanket Additional Insured Endorsement Is Clear And Not Ambiguous, Travelers Is Not Entitled To Have The Clause Interpreted In Its Favor.

Finally, Travelers argues that if this Court rejects all of its arguments, it is still entitled to summary judgment because the language in the policy is "ambiguous." Plaintiff's Brief at 20. However, the general rule of *contra proferentum* is not applicable to this policy, as the word "solely," as used in the contract, is not open to multiple interpretations. "Unambiguous words in an insurance policy exclusion must be construed in their usual and ordinary sense." County of Barnstable v. American Fin. Corp., 51 Mass. App. Ct. 213, 215, 744 N.E.2d 1107 (2001). Nor is a controversy over the meaning of the term created simply because Travelers now objects to the contract it agreed to. "An ambiguity is not created simply because a controversy exists between the parties." Id. "Where the terms of an exclusionary clause are plain and free from ambiguity, the words of the policy must be construed in their 'usual and ordinary sense' and not strictly against the insurer." Farm Family Mut. Ins. Co. v. Whelpley, 54 Mass. App. Ct. 743, 745, 767 N.E.2d 1101 (2002). Because the terms of this policy were objectively clear and reasonable, both on its face and within the context of the contract as discussed *supra*, there is no ambiguity. Travelers is not entitled to a construction of the contract in any manner other than its clear meaning.

### CONCLUSION

In light of the foregoing, the defendants request that Honorable Court deny the Plaintiff's Motion for Summary Judgment on Count I of the Complaint.

Instead, the defendants ask that this Court find that the phrase "arising solely out of" imposes a heightened proximate causation standard, greater than the intermediate standard applicable to the phrase "arising out of". In addition, they ask that this Court find that the issue of proximate cause for this accident involves significant and diverse interests of other parties, the addition of which would destroy diversity jurisdiction in this matter and, that the issue of the cause of the accident is a matter currently under consideration in another court, specifically the Bristol Superior Court. As such, defendants submit, the case should be remanded to the Bristol Superior Court where the underlying action is pending or stayed pending resolution of the same so as to avoid the untenable possibility that parties would be subject to inconsistent judgments and thereby irreparably prejudiced.

                Respectfully submitted,

                The Defendant,
                Genesis Indemnity Insurance Company
                By its attorney,

                /s/Jocelyn M. Sedney
                Jocelyn M. Sedney, BBO# 552115
                **BRODY, HARDOON, PERKINS & KESTEN, LLP**
                One Exeter Plaza, 12th Floor
                Boston, MA  02116
                (617) 880-7100

                The Defendant,
                TIG Insurance Company
                By its attorney,

                /s/William B. Scarpelli
                Mark P. Harty, BBO#224780
                William B. Scarpelli, BBO#560034
                Morrison Mahoney LLP
                250 Summer Street
                Boston, MA  02210
                (617) 737-8886

Dated: November 29, 2005