UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11490 JLT

TRAVELERS PROPERTY CASUALTY )
COMPANY OF AMERICA (FORMERLY )
KNOWN AS THE TRAVELERS )
INDEMNITY COMPANY OF ILLINOIS) )
INDIVIDUALLY AND A/S/O DACON )
CORPORATION AND A/S/O )
CONDYNE VENTURES, LLC., )
    Plaintiff )
 )
vs. )
 )
GENESIS INDEMNITY INSURANCE COMPANY )
And TIG INSURANCE COMPANY, )
    Defendants )

## DEFENDANTS' CONCISE STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT

The defendants, Genesis Indemnity Insurance Company ("Genesis") and TIG Insurance Company ("TIG") set forth the following concise statement of additional material facts in support of their Opposition to Plaintiff's Motion for Summary Judgment.

1. The plaintiff in the underlying Complaint, Michael Martin ("Martin") reported with his supervisor, Scott Viveiros ("Viveiros") to the Freezer Project at 7 a.m. on January 3, 2001. See Pl. App. Ex. 4, p. 23; See Def. App. Ex. 2, p. 9.

2. Martin and Viveiros were unable to get their lift in the building on January 3, 2001 at 7:00 a.m. They were unable to borrow another contractor's lift as they were all being used. See Pl. App. Ex. 4, pp. 25, 26.

3. The Dacon supervisor, Mike, told them that everything was being used and they would have to come back after hours to finish their work. See Pl. App. Ex. 4, pp. 26, 27; See Def. App. Ex. 2, p. 10.

4. The work to be performed by Martin and Viveiros also could not be performed when so many other contractors were on site. See Def. App. Ex. 2, p. 71.

5. They returned after hours, as instructed by Dacon, to do their work along a section of freezer racking called Phase I. See Def. App. Ex. 1, p. 27.

6. To do his work that day, Martin had to climb the racks. See Def. App. Ex. 2, pp. 11, 36, 38-39, 65-69. Viverios told him to do so.

7. Martin climbed up the racks to about 20 feet and he took his first step to the middle of the rack structure. As he stepped on the flat section of racking, it moved and he lost his footing and fell. See Pl. App. Ex. 4, p. 40.

8. The racking was designed and manufactured by Frazier Industrial Company ("Frazier") pursuant to a contract with Condyne Ventures, LLC. ("Condyne"). See Def. App. Ex. 3, p.10.

9. Frazier contracted with JJS Construction, Inc. ("JJS") for the installation of the rack structure. See Def. App. Ex. 3, p.12.

10. At the time Martin fell, there were no signs or warnings from the subcontractor, JJS, indicating that the racking was not completed or secure in that area. See Def. App. Ex. 1, p. 27, 28.

11. JJS relied upon the general contactor, Dacon, to tell subcontractors whether the racks were completed or whether they should stay off the racks. See Def. App. Ex. 1, p. 28. This is contrary to Frazier's required procedure that JJS complete the installation row by row, releasing each row to Condyne as it is completed. See Def. App. Ex. 3, p.137.

12. The Frazier Proposal for the racking with Condyne required that Condyne sign off on each row of rack after installation before allowing any access to other trades. Condyne failed to do so. See Def. App. Ex. 3, p.122.

13. JJS, the racking contractor, worked at the site on January 3, 2001 until approximately 6:00 p.m. The general contractor, Dacon, did not have a construction supervisor on site at the time but he was aware that JJS was working after hours, without supervision. See Def. App. Ex. 1, p. 42-44, 53, 54-55.

14. Other trades worked in the racks without fall protection. See Pl. App. Ex. 4, p. 34; See Pl. App. Ex. 9, p. 134.

15. Dacon, as general contractor did not hold periodic safety meetings with all subcontractors regarding safety issue on the job. Martin and Viveiros never attended any meeting. See Pl. App. Ex. 4, p. 35, See Def. App. Ex. 2, p. 87.

16. Dacon's company policy was not to allow subcontractors into an area unless it was inspected and okayed by Dacon. Dacon supervisors failed to enforce this policy. See Pl. App. Ex. 9, p. 37.

17. If an area were not safe to work in, it was supposed to be marked with caution tape by Dacon or stipulated to in meetings. See Pl. App. Ex. 9, p. 37, 38.

18. The first safety meeting held by Dacon, the general contractor, was January 17, 2001, fourteen days after Martin fell. See Pl. App. Ex. 9, p. 47, 48.

19. Immediately after Martin's fall, the subcontractor, JJS, was working in the racks where Martin fell, tightening bolts and tidying up. JJS had failed to secure members of the racking system when it left the job on the day Martin fell. See Def. App. Ex. 2, p. 74; See Def. App. Ex. 4, p.118.

20. The Freezer Project was a 'fast track' job; a great deal of work had to get done in a short period of time. There was pressure to get the job done. See Def. App. Ex. 2, p. 78, 79; See Def. App. Ex. 4, p.65-69.

21. In fact, Condyne intended to occupy the building on December 31, 2000. On January 2, 2001, two days before Martin fell, Condyne demanded to know when they could take occupancy. See Def. App. Ex. 4, p. 64, 70.

22. Condyne repeatedly told Dacon that they expected Dacon to meet the December 31, 2000 deadline and repeatedly expressed dissatisfaction about construction delays. See Def. App. Ex. 4, p. 70-71, 72-73.

23. Dacon in turn instructed its subcontractors to continue working long days and weekends. See Def. App. Ex. 4, p.83.

24. Condyne repeatedly called Frazier in late December 2000 and January 2001 instructing them to get the job done. See Def. App. Ex. 4, p.87-89.

25. Condyne did not believe that the rack installation needed to be complete prior to the sprinkler contractor using the racking system to install the fire protection system. See Def. App. Ex. 4, p.89.

26. Condyne took no steps to ensure that Dacon was enforcing safety measures on the job site. See Def. App. Ex. 4, p.102.

27. Dacon had overall responsibility with regard to maintaining job site safety. See Def. App. Ex. 4, p.30, 49.

Respectfully submitted,
The Defendant,
Genesis Indemnity Insurance Company
By its attorney,

/s/ Jocelyn M. Sedney
Jocelyn M. Sedney, BBO# 552115
**BRODY, HARDOON, PERKINS & KESTEN, LLP**
One Exeter Plaza, 12th Floor
Boston, MA 02116
(617) 880-7100

The Defendant,
TIG Insurance Company
By its attorney,

/s/ William B. Scarpelli
Mark P. Harty, BBO#224780
William B. Scarpelli, BBO#560034
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 737-8886

Dated: November 29, 2005